UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BULLDOG INVESTORS LLP, SPECIAL OPPORTUNITIES FUND, INC., and HIGH INCOME SECURITIES FUND,<br><br>    *Plaintiffs,*<br><br>v.<br><br>FIRST TRUST ADVISORS L.P., JAMES A. BOWEN, RICHARD E. ERICKSON, THOMAS R. KADLEC, DENISE M. KEEFE, ROBERT F. KEITH, and NIEL B. NIELSON,<br><br>    *Defendants.* | No. 23-cv-11034-MJJ |

**REPORT AND RECOMMENDATION**

LEVENSON, U.S.M.J.

INTRODUCTION

Plaintiffs Bulldog Investors LLP ("Bulldog Investors"), Special Opportunities Fund, Inc., and High Income Securities Fund (together, "Plaintiffs") are shareholders in an investment fund, the First Trust Dynamic Europe Equity Income Fund ("FDEU" or the "Fund"). In May 2023, Plaintiffs filed a lawsuit against the manager of the Fund, First Trust Advisors L.P. ("First Trust"), and members of the Fund's Board of Trustees (the "Board" or "Board Members"), James A. Bowen, Richard E. Erickson, Thomas R. Kadlec, Denise M. Keefe, Robert F. Keith, and Niel B. Nielson (together, "Defendants"). Docket No. 1. Defendants thereafter filed a motion to dismiss. Instead of opposing the motion, Plaintiffs joined Defendants in a stipulation to dismiss the case with prejudice. Docket No. 28. In the joint stipulation, Plaintiffs noted their intention to reserve jurisdiction with the Court for the purpose of filing a motion for attorney's

fees and expenses, and to "seek discovery" if Defendants raise any "factual issues" in opposition to Plaintiffs' motion. *Id.* Defendants noted that their joining in the stipulation was not a concession, in any respect, to Plaintiffs' position concerning fees or discovery. *Id.*

The Court reserved its jurisdiction and adopted the briefing schedule proposed by the parties. Docket No. 29. Plaintiffs have now filed a motion seeking an award of attorneys' fees and costs, and have moved to join the Fund as a party to the action (the "Motion for Fees and Joinder"). Docket No. 30. Plaintiffs filed a memorandum in support of the Motion for Fees and Joinder. Docket No. 31. Defendants filed an opposition to the Motion for Fees and Joinder, and Plaintiffs filed a reply. Docket Nos. 34, 37.

After Defendants filed their opposition to the Motion for Fees and Joinder, Plaintiffs served four discovery requests on Defendants. When Defendants refused to respond, Plaintiffs filed a motion to compel responses to two of those requests (the "Motion to Compel"). Docket No. 39. Plaintiffs filed a memorandum in support of the Motion to Compel, and Defendants filed an opposition. Docket Nos. 40, 42.

Judge Joun has referred both motions, the Motion for Fees and Joinder, and the Motion to Compel. Docket No. 41. A report and recommendation is required here, due to the presence of the motion for attorneys' fees, which, as outlined below, is dispositive of the motion for joinder and the Motion to Compel. *See* Fed. R. Civ. P. 54(d)(2)(D) (noting that the district court "may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter"); Fed. R. Civ. P. 72(b) (requiring report and recommendation for dispositive pretrial matters).

I held a hearing on the motions and took the matter under advisement. For the reasons set forth below, I recommend that the Court deny both of Plaintiffs' motions.

I.      **Factual Background**

According to the Complaint, the Fund was a closed-end mutual fund created in or around 2015 and organized as a Massachusetts business trust. *See* Docket No. 1 ¶¶ 2, 18. First Trust is the investment advisory firm that manages the Fund's investment portfolio. *Id.* ¶ 17. The Board Members are responsible for managing the business and affairs of the Fund. *Id.* ¶ 18.

As a closed-end mutual fund, shares of the Fund were issued through an initial public offering ("IPO") in 2015. *Id.* ¶ 30. Unlike an open-end mutual fund, which can continuously issue and redeem shares according to its net asset value ("NAV"), a closed-end fund issues a fixed number of shares via its IPO. *Id.* ¶¶ 30–31. Those shares are traded in the secondary market; accordingly, investors can only buy and sell their shares at prices found in the secondary market, which may vary from the NAV. *Id.* If the trading price for a closed-end fund is below the fund's NAV, the fund is said to trade at a "discount." *Id.* ¶ 31. The Complaint alleges that the Fund posted low annualized returns and has traded at a discount of roughly 15%.

At the time of the IPO, the Fund's prospectus promised that, in 2023, shareholders could vote on whether to convert the Fund into an open-end fund, which would allow shares to be redeemed at NAV, rather than at the discount. *Id.* ¶ 32.

Plaintiffs Special Opportunities Fund, Inc. and High Income Securities Fund are two closed-end investment companies that hold shares in the Fund. *Id.* ¶¶ 15–16. Plaintiff Bulldog Investors is the investment advisor for the Special Opportunities Fund, Inc., and several of its principals are on the board of trustees of the High Income Securities Fund.

Plaintiffs hold roughly 6% of the Fund's voting shares and have sought changes in the management of the Fund. *Id.* ¶ 40. In 2022, Bulldog Investors asked First Trust whether the Board Members would support a proposal to convert the Fund to an open-end mutual fund. *Id.* ¶ 41. When negotiations stalled, Bulldog Investors submitted a letter to First Trust, notifying First

Trust that Bulldog Investors intended to nominate two new trustees for consideration at the Fund's 2023 annual meeting. *Id.* ¶¶ 42–44. First Trust rejected the nomination notice, asserting that the notice failed to comply with Fund by-laws and with federal securities laws. *Id.* ¶ 48.

In February 2023, Bulldog Investors filed a statement with the Securities and Exchange Commission, announcing that Bulldog Investors would be soliciting proxies at the Fund's 2023 annual meeting and identifying proposed nominees. *Id.* ¶ 53. Bulldog Investors' statement noted that its purpose in soliciting proxies was "to elect Trustees who [it] believe[s] will support action to address the persistent trading discount of the Fund's shares to their NAV," via conversion from a closed-end fund to an open-end fund. *Id.* ¶ 56. Thereafter, the Fund filed a proxy statement, asking shareholders to reelect two of the incumbent Board Members, Defendants Denise M. Keefe and Robert F. Keith. The Fund's statement also instructed shareholders that "any votes submitted for a Bulldog Purported Nominee will not be counted" due to the nominees' ineligibility. *Id.* ¶¶ 57–58.

Leading up to the 2023 annual Fund meeting, Defendants took steps to enforce a Fund by-law that caps votes for shareholders above certain ownership thresholds (the "Control Share Bylaw"). *Id.* ¶ 75. Plaintiff High Securities Income Fund sent two letters to the Board Members, demanding that the Control Share Bylaw be rescinded; Defendants did not respond except by continuing their efforts to enforce the Control Share Bylaw. *Id.* ¶¶ 76–78.

On March 22, 2023, less than two weeks before the 2023 annual Fund meeting, Defendants announced that the Board had approved a "reorganization of FDEU into a to-be-created exchange-traded fund ('ETF')," that the reorganization was "subject to requisite shareholder approval," and that "there is no assurance when or whether such approvals, or any other approvals required for the transaction, will be obtained." *Id.* ¶¶ 87–90.

Plaintiffs boycotted the 2023 annual Fund meeting. Nevertheless, according to a third-party proxy service, shareholders voted in favor of Plaintiffs' nominees over the incumbent nominees by a margin of around ten percent. *Id.* ¶¶ 91–95. Plaintiffs' nominees reportedly received more votes than the incumbent nominees, even though the Control Share Bylaw was enforced and Plaintiffs were not permitted to cast any votes. *Id.*

## II.     Procedural History

### A.     *Filing and Dismissal of the Initial Complaint*

Plaintiffs filed their Complaint on May 10, 2023, alleging that the Fund's Control Share Bylaw violates federal securities law and that the Board Members breached their fiduciary duties. *Id.* ¶¶ 105–16. Plaintiffs sought a declaratory judgment that Plaintiffs' nominees were improperly rejected and that the Control Share Bylaw is unenforceable. *Id.* at 22–23. Plaintiffs also sought damages and costs, including attorneys' fees. *Id.*

Prior to any Rule 26 conference, Defendants filed a timely motion to dismiss the Complaint. Docket No. 15. In the supporting memorandum of law, Defendants noted that the Fund had rescinded the Control Share Bylaw at a June 2023 board meeting. *See* Docket No. 16, at 15.

After first seeking a page-limit extension for their opposition to the motion to dismiss, and an extension of the filing deadline, Plaintiffs filed a joint stipulation to dismiss the action with prejudice on October 23, 2023. Docket Nos. 24, 28. Pertinent to the present motions, the stipulation recited:

> Plaintiffs intend to submit a motion requesting certain attorneys' fees and expenses that they contend they are entitled to in this litigation (the "Fee Motion"). Therefore, Plaintiffs ask that the Court reserve jurisdiction to rule on the Fee Motion.

Docket No. 28, at 1. The stipulation set forth a briefing schedule for Plaintiffs' motion for attorneys' fees and expenses and further noted:

5

> If factual issues are raised in Defendants' opposition brief, Plaintiffs reserve all rights to seek discovery before filing their reply brief. Defendants reserve all rights to oppose any discovery sought by Plaintiffs.

*Id.* at 2.

On October 23, 2023, the day the parties filed the joint stipulation, the Board announced that shareholders had approved converting the Fund to an open-end ETF. *See* Docket No. 31, at 9.

### B.    *The Current Motions*

Now, in arguing for an award of attorneys' fees, Plaintiffs contend that the conversion "created tremendous tangible, realizable shareholder value" in the sense that shareholders would henceforth be able to redeem their shares at 100% of NAV, rather at than the discounted trading price. *Id.* at 10. Plaintiffs calculated that the Fund's market capitalization jumped by $27.91 million from the day prior to the Fund's announcement of the open-end conversion. *Id.*

In opposition to Plaintiffs' Motion for Fees and Joinder, Defendants argue that there is no legal authority to support Plaintiffs' request for an award of attorneys' fees. Defendants also argue that, as a factual matter, Plaintiffs cannot show that their lawsuit "resulted in" the Fund's open-end conversion. Defendants point to the fact that the Fund prospectus, issued at the inception of the Fund in 2015, required Board Members to offer a conversion for shareholder consideration in 2023.

Plaintiffs have served discovery requests on Defendants seeking, in relevant part, materials concerning the Board's reasons for rescinding the Control Share Bylaw and the Board's reasons for offering an open-end conversion. *See* Docket No. 40, at 4. Defendants have refused to comply with the discovery requests, and Plaintiffs filed the instant Motion to Compel.

**III.   Analysis**

There are effectively three motions before the Court. First is Plaintiffs' request that the Court award them costs and reasonable attorneys' fees. As discussed below, Plaintiffs base this request on the equitable legal principle referred to as the "common interest doctrine" under Massachusetts law.[1] Second, Plaintiffs move the Court to join the Fund as a required party to the action under Rule 19 of the Federal Rules of Civil Procedure. Third, Plaintiffs move to compel Defendants to respond to their pending discovery requests pursuant to Rule 37 of the Federal Rules of Civil Procedure.

As discussed in greater detail below, unless Plaintiffs' underlying motion for attorneys' fees is viable, their motion to join the Fund and their motion to compel discovery about the management of the fund are effectively moot. Because I recommend denying the motion for attorneys' fees, I will first discuss that motion and then address the others.

    *A.   Motion for Attorneys' Fees*

Plaintiffs request that the Court award attorneys' fees and costs to Plaintiffs, arguing that, even though their case was dismissed with prejudice, Plaintiffs' efforts "conferred meaningful benefits on an identifiable group of other persons." Docket No. 31, at 10. In support of this position, Plaintiffs point to the "common benefit doctrine," which Plaintiffs describe as a "long-standing principle of equity in the Commonwealth that plaintiffs who bring suit for the benefit of others ought not bear the burden of attorney's fees singlehandedly." *Id.* (quoting *Tocci v. Tocci*, 490 Mass. 1, 21 (2022)).

---

[1] The parties do not dispute that the Fund is a Massachusetts business trust and subject to Massachusetts state law.

Citing no Massachusetts case law or statutory authority to support their claim for attorneys' fees in connection with a case that was dismissed, Plaintiffs acknowledge that the "law in Massachusetts is undeveloped" in the circumstances presented here. Docket No. 37, at 4 n.5. Plaintiffs suggest, however, that certain Delaware decisions that lend support to their position are analogous. In Plaintiffs' words, attorneys' fees are awardable "where an individual litigant creates, at his own expense, corporate benefits for a fund," and Plaintiffs urge the Court to consider several Delaware common benefit cases as persuasive authority. Docket No. 37, at 4, 4 n.5.

In opposing Plaintiffs' request for fees, Defendants note that Massachusetts has long followed the so-called "American Rule," whereby litigants pay their own attorneys' fees, absent an express statutory or contractual provision to the contrary. Docket No. 34, at 3; *see John T. Callahan & Sons, Inc. v. Worcester Ins. Co.*, 453 Mass. 447, 449 (2009) ("[I]n the absence of statute, or court rule, [courts] do not allow successful litigants to recover their attorney's fees and expenses."). Relevant to the present case, Defendants point out that there is a Massachusetts statute concerning business corporations and shareholder litigation, which provides for awards of attorneys' fees only in the context of successful "derivative actions." *See* Docket No. 34, at 15 (citing Mass. Gen. L. c. 156D, § 7.46). Defendants contend that because Plaintiffs' lawsuit is a direct action (rather than one brought on behalf of all shareholders), this case does not fall within the purview of Section 7.46. This, Defendants argue, disposes of Plaintiffs' claim; because the Massachusetts statutory scheme does not provide for attorneys' fees for direct shareholder actions, the common law "American Rule" governs.

Plaintiffs do not identify any binding authority that provides either a statutory or a common law basis for awarding attorneys' fees in a shareholder litigation involving direct

claims. Instead, Plaintiffs cite *Tocci* for the general proposition that there exists a "long-standing principle of equity in the Commonwealth that plaintiffs who bring suit for the benefit of others ought not bear the burden of attorney's fees singlehandedly." Docket No. 31, at 10 (quoting *Tocci*, 490 Mass. at 21). But the *Tocci* case did not establish any authority for awarding attorneys' fees in shareholder litigation. In *Tocci*, the Massachusetts Supreme Judicial Court ("SJC") considered—but declined to decide—whether an equitable principle known as "surcharge" should be extended from the context of trusts to the context of a closely-held corporation.[2] *See Tocci*, 490 Mass. at 23, 23 n.13. It bears noting that the SJC cited two cases as embodying the "long-standing principle of equity" which Plaintiffs seek to invoke here and both of those cases concerned *derivative* actions. *See id.* at 21 (citing *Shaw v. Harding*, 306 Mass. 441, 450 (1940) (addressing a derivative action) and *Sagalyn v. Meekins, Packard & Wheat, Inc.*, 290 Mass. 434, 440–41 (1935) (same)).

Plaintiffs acknowledge that this case involves a direct claim against the corporation and is not a derivative proceeding. *See* Docket No. 37, at 3 (describing the circumstances of this case as "a stockholder obtained a substantial corporate benefit for all stockholders as a *result of claims asserted directly*" (emphasis added)). When pressed on the source of law that might support their claim, Plaintiffs' counsel argued for an application of Massachusetts common law, via the "common benefit doctrine," and invited the Court to apply that doctrine beyond the confines of derivative actions, to reach this case.

Plaintiffs cite to *Jenkins v. Marksdale Gardens Cooperative Corp.*, No. 22-786, 2023 WL 4047803, at *3 (Mass. Super. Ct. May 19, 2023), which Plaintiffs' counsel identified at the

---

[2] Under the rubric of "surcharge," a beneficiary who sues a trustee for breach of fiduciary duty may recover attorneys' fees directly from the trustee.

hearing as their "best" Massachusetts case. Plaintiffs describe *Jenkins* as supporting the proposition that:

> [in] the context of shareholder litigation, it is black letter law that a shareholder may recover fees and expenses when it confers a substantial benefit upon other shareholders, including rescission of infringing charter provisions and bylaws.

Docket No. 31, at 11–12 (citing *Jenkins*, along with various out-of-state cases not bearing on Massachusetts law). *Jenkins*, however, emphatically does not establish "black letter law" along the lines Plaintiffs suggest. On the contrary, the presiding justice in *Jenkins* found the attorneys' fee argument in that case to be underbaked and ordered further briefing on the point. *See* 2023 WL 4047803, at *3 ("Whether in this context Massachusetts law grants a court discretion to award fees as an exception to the . . . American Rule that a prevailing litigant will bear her own fees, . . . and, if so, whether I should award fees in this instance and in what amount, *has not adequately been framed by the parties*." (emphasis added)). Plaintiffs' counsel acknowledged at the hearing that there is no report of any subsequent refinement of the point within the *Jenkins* case.

In Massachusetts, the availability of attorneys' fee awards in successful shareholder derivative actions has now been codified in Section 7.46, which is part of a larger statute governing Business Corporations. Section 7.46 (entitled "Payment of Expenses") states:

> On termination of the *derivative proceeding* the court may:
>
> (1) order the corporation to pay the plaintiff's reasonable expenses, including counsel fees, incurred in the proceeding if it finds that the proceeding has resulted in a substantial benefit to the corporation; or
>
> (2) order the plaintiff to pay any defendant's reasonable expenses, including counsel fees, incurred in defending the proceeding if it finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose.

Mass. Gen. L. c. 156D, § 7.46 (emphasis added). Related sections of the statute illustrate that the "derivative proceeding" discussed in Section 7.46 is within the umbrella of shareholder litigation. *See* § 7.40 (defining "[d]erivative proceeding" as "a civil suit in the right of a domestic corporation"); § 7.41 (providing that only shareholders have standing to commence a derivative proceeding).

By its plain language, Section 7.46 permits attorneys' fee awards in shareholder litigation for derivative proceedings that result in substantial benefit to the corporation.[3] The SJC has not ruled on the applicability of Section 7.46 to direct (non-derivative) shareholder claims. This is unsurprising because—by its terms—Section 7.46 applies to *derivative* claims. In the meantime, Massachusetts lower courts have found that Section 7.46 precludes the awarding of attorneys' fees in connection with direct claims brought by stockholders. *See Moore v. Valle Auto Mall, Inc.*, 92 Mass. App. Ct. 1117, 2017 WL 6002817 at *2 (2017) (vacating trial court's award of fees under Section 7.46 for a corporation's counterclaims where counsel "confirmed that the counterclaims were brought directly" but the award was "based on the judge's erroneous treatment of the claims as derivative"); *see also Miller v. Boldluc*, No. 2015 CV 0807, 2015 WL 9805817, at *1, *1 n.1 (Mass. Super. Ct. Dec. 18, 2015) (awarding fees under Section 7.46 for the shareholder's derivative claims but rejecting plaintiff's argument that "he is entitled to an

---

[3] In considering the Massachusetts statute, the Court first looks to the statutory language. *United States v. Lawrence*, 675 F. App'x 1, 4 (1st Cir. 2017) ("Under Massachusetts law, '[a] fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result.'" (quoting *Commonwealth v. Chamberlin*, 473 Mass. 653, 660 (2016))). Thereafter, the Court "may look to a variety of sources, including decisions of the lower courts in Massachusetts, persuasive adjudications by other courts, scholarly works, and considerations touching upon public policy." *Id.* at 4 n.6 (quoting *Vt. Mut. Ins. Co. v. Zamsky*, 732 F.3d 37, 42 (1st Cir. 2013)).

award of fees on his direct claim alleging breach of fiduciary duty," noting that plaintiff "offers no Massachusetts appellate case law in support").

The distinction recognized by the Massachusetts Appeals Court—permitting awards of attorneys' fees for successful derivative claims, but not for direct claims—accords with Massachusetts common law. *See Mullins v. Colonial Farms Ltd.*, 95 Mass. App. Ct. 1105, 2019 WL 1399964 at *7 (2019) (noting that the "discretionary nature of fee awards under § 7.46 is entirely consistent with the law on derivative proceedings that pre-existed the statute"); *see also Martin v. F.S. Payne Co.*, 409 Mass. 753, 758 (1991) ("Our cases have acknowledged that a plaintiff in a stockholders' derivative action is entitled to an award of counsel fees out of whatever proceeds of the action the corporation receives.") (collecting cases).[4]

To the extent that Plaintiffs urge a different reading of Section 7.46, they point the Court to Delaware law, contending that Delaware law permits awards of attorneys' fees for direct shareholder claims. Even assuming Delaware law would be hospitable to Plaintiffs' contentions, there is scant reason to expect that Massachusetts courts would look to Delaware law in interpreting Section 7.46. The SJC has had occasion, in *International Brotherhood of Electrical Workers Local No. 129 Benefit Fund v. Tucci*, 476 Mass. 553, 563 (2017), to evaluate the

---

[4] Defendants argue that Section 7.46, by itself, impliedly bars attorneys' fees for direct claims. Defendants note, correctly, that Chapter 156D was enacted as a comprehensive statutory scheme. *See* Docket No. 34, at 19; *see also* Mass. Gen. L. ch. 156D, Comment to Introduction (describing the 2004 revision of Chapter 156D as the "first comprehensive revision of Massachusetts law governing business corporations in approximately 100 years").

Although Defendants' reading of the statute seems reasonable, the Court need not reach the issue. It is enough to note that, under Massachusetts common law, the American Rule precludes awards of attorneys' fees, absent an express statutory provision or other established basis. As the First Circuit has cautioned, "[c]oncerns both of prudence and of comity argue convincingly that a federal court sitting in diversity must hesitate to chart a new and different course in state law." *Smith v. Prudential Ins. Co. of Am.*, 88 F.4th 40, 57 (1st Cir. 2023) (alterations in original) (internal quotations and citations omitted).

persuasiveness of Delaware precedent, in the context of Chapter 156D and its distinct treatment of direct claims and derivative proceedings in Massachusetts. In that case, the SJC highlighted the differences between the treatment of direct claims against corporate directors for breach of fiduciary duty under Section 8.30 of Chapter 156D, and the treatment of such claims under Delaware law. *See Tucci*, 476 Mass. at 563. Noting that "Delaware corporate law principles and those of Massachusetts are not always congruent," the SJC declined to follow Delaware's approach when interpreting the Massachusetts Business Corporations statute. *See id.* at 563 n.14. Plaintiffs suggest no good reason to expect that the SJC would be any more likely to look to Delaware law when it comes to interpreting Section 7.46.

Massachusetts courts routinely dismiss cases in which a shareholder files a direct claim that is effectively a derivative action. *See, e.g.*, *Bessette v. Bessette*, 385 Mass. 806, 808–10 (1982) (affirming dismissal of direct action in which "plaintiffs could assert their claims only as a stockholders' derivative action").

In arguing that this case should be treated much the same way as if it were a derivative proceeding, Plaintiffs ask the Court to ignore critical equitable principles that govern Massachusetts law regarding derivative proceedings. In particular, Section 7.42 dictates special procedural requisites for derivative proceedings, including a demand requirement that is coupled with a safe harbor period for the corporation to act. *See* Mass. Gen. L. c. 156D, § 7.42. These requirements preclude claims—like Plaintiffs' claim here—based on a corporate decision that is effected "voluntarily," even if a plaintiff's demand may have spurred that decision. In arguing that this direct case should be put on the same footing as a derivative action, Plaintiffs ignore the procedures that expressly allow corporations an opportunity to act upon a shareholder demand *pre-lawsuit*. Far from supporting any open-ended equitable principle that might justify grants of

13

attorneys' fees, such provisions ward against precisely the scenario at issue here—in which a litigant brought a case and the corporation promptly met the litigant's demands.[5]

There are additional considerations that weigh against Plaintiffs' attempt to invoke a general equitable principle as a basis for awarding attorneys' fees in this case. Above all, Plaintiffs cannot reasonably be called a prevailing party. Even accepting Plaintiffs' contention that they prevailed *outside* the courthouse, the docket discloses beyond peradventure that this case was dismissed with prejudice before any answer was filed. Under these circumstances, Plaintiffs cannot show that any benefit to the shareholders "resulted" from their *litigation*. Defendants did not enter into any settlement agreement with Plaintiffs, nor did the Court order an award of damages that accrued to the Fund, nor did the Court enter any injunctive relief that affected the Fund.[6] Neither have Plaintiffs pointed to any persuasive authority to support the proposition that attorneys' fees may be awarded for *pre-litigation* shareholder activism, whether in a derivative proceeding or a direct action. It is undisputed that the Board approved the open-end conversion prior to Plaintiffs' lawsuit.

It also bears noting that there is little substance to Plaintiffs' attempt to analogize this case to one in which a party successfully litigates to create a common fund. *See* Docket No. 31, at 13–15. There is, in this case, no actual pool or fund, and there is no award of any damages to a

---

[5] In Defendants' telling, Plaintiffs' demands were incidental. Defendants contend that the decision to vote on conversion to an open-end fund was baked in from the inception of the Fund. That is a factual matter, not ripe for decision on this record.

[6] While the Board did vote to rescind the Control Share Bylaw after the lawsuit was filed, there is nothing in the docket to support any direct link between the litigation and the rescission of the Control Share Bylaw. Any finding that the rescission "resulted" from the litigation would depend on an inquiry into the Board Members' subjective motivations. Any such inquiry would bear scant resemblance to the kind of factfinding that is typically associated with fee awards for prevailing parties.

corporate entity (as there would be in a derivative suit). The value that Plaintiffs point to—and for which they claim credit—is entirely notional, based on an increase in the nominal market capitalization of the Fund. That is to say, Plaintiffs offer a computation based on differences in reported market prices for shares, multiplied by the number of outstanding shares.[7] While it seems certain that the difference in share prices is attributable to the conversion to an open-end fund, it is not as if those shares were actually bought or sold at those prices. Nor are there any proceeds sitting somewhere as an identifiable pool of monies. Applying a common benefit theory under such circumstances would raise thorny questions of equity and proportionality.

In short, under well-settled principles of Massachusetts law, the "American Rule" governs here—so each party is expected to bear its own costs. And, because Plaintiffs brought direct (rather than derivative) claims, there is no authority under Section 7.46 for awarding attorneys' fees.

Accordingly, I recommend denying Plaintiffs' motion for attorneys' fees.

B. *Motion for Joinder*

Plaintiffs bring their motion to join the Fund as a party to the case solely as an adjunct to their motion for attorneys' fees. *See* Docket No. 31, at 15 ("To ensure complete relief to Plaintiffs and that the Fund has an opportunity to the heard with respect to Plaintiffs' fee request, the Fund should be added as a party to this action."). In a typical derivative action, a plaintiff might seek an award of fees based on a recovery that was paid to the corporation by managers

---

[7] Although Plaintiffs' demand speaks of "reasonable" attorneys' fees, it appears that they have in mind a percentage of the $27 million in notional value at issue here. That would be a *very different* kind of payday than the sort of lodestar-based hourly rates that typically attach when a statute permits awards of attorneys' fees. Presumably a "reasonable" attorneys' fee for filing a Complaint (that did not survive a motion to dismiss) would reflect a modest number of attorney hours.

15

who have been found culpable. Here, by contrast, it seems that Plaintiffs have in mind to *take money from* the Fund, for Plaintiffs' benefit. For the reasons discussed previously, Plaintiffs cannot make out a claim against the already-named Defendants, let alone a claim against the Fund itself.

Because I recommend denying Plaintiffs' attorneys' fees motion, I recommend denying Plaintiffs' joinder motion as moot.

C.     *Motion to Compel*

Similar to Plaintiffs' joinder motion, Plaintiffs' motion to compel production of documents is relevant only in the context of a cognizable claim for attorneys' fees. *See* Docket No. 40, at 6 (identifying the motion for attorneys' fees as the grounds for the motion to compel). Absent a viable legal theory that would make relevant the subjective intentions of the parties, the requested discovery is superfluous, not to mention speculative.

Plaintiffs argue that a discovery motion should not be decided on the basis of the merits of the underlying claim. *See id*. at 7; *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Coinstar, Inc.*, No. C13-1014-JCC, 2014 WL 3396124, at *3 (W.D. Wash. July 10, 2014) ("[I]t is inappropriate to resolve the merits of an underlying claim on a motion to compel, and the Court declines to do so."). But the threshold for undertaking discovery, in any lawsuit, is the articulation of a plausible claim for relief. *See Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) ("[A] plaintiff must state a plausible claim before she can invoke a right to discovery."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Without a legally cognizable claim, there can be no plausible entitlement to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally

16

cognizable right of action." (alterations in original) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004))).

Plaintiffs are not entitled to conduct discovery in hopes of identifying facts that might support a claim for attorneys' fees. *See Parker*, 935 F.3d at 19 ("Because there is nothing in the proposed amended complaint that lifts the plaintiff's . . . claims beyond the realm of speculation, we cannot 'unlock the doors of discovery.'" (quoting *Iqbal*, 556 U.S. at 678)). Where Plaintiffs' motion does not present a cognizable claim for awarding attorneys' fees, and fails as a matter of law, there is no basis for conducting discovery. *See Malanowski v. Wells Fargo Bank N.A. Tr. Option One Mortg. Corp. Tr. 2005-1 Asset-Backed-Certificates, Series 2005-1*, No. CV 3:21-11628-MGM, 2022 WL 2758474, at *2–3 (D. Mass. July 14, 2022) (staying discovery pending decision on a dispositive motion, noting that "if [the dispositive motion] is granted, there will be no need for discovery") (quoting *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 5 (D.D.C. 2001)).

Because I recommend denying Plaintiffs' attorneys' fees motion, I recommend denying Plaintiffs' motion to compel as moot.

CONCLUSION

For the foregoing reasons, I recommend that the Court:

DENY Plaintiffs' Motion to Join First Trust Active Global Quality Income ETF and Award Attorneys' Fees and Costs [Docket No. 30].

Specifically, I recommend that the Court:

DENY Plaintiffs' motion for attorneys' fees on the merits; and

DENY Plaintiffs' joinder motion as moot.

I also recommend that the Court:

DENY Plaintiffs' Motion to Compel Production of Documents [Docket No. 39] as moot.[8]

/s/ Paul G. Levenson
Paul G. Levenson
U.S. MAGISTRATE JUDGE

Dated: June 14, 2024

---

[8] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within fourteen days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Sec'y of Health & Hum. Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).